**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**ALAN LOREFICE,**

                                  **Plaintiff,**

    vs.                                                              1:21-CV-01367
                                                                     (MAD/CFH)

**STATE OF NEW YORK, and DEPARTMENT
OF ENVIRONMENTAL CONSERVATION,**

                                  **Defendants.**

_____

**APPEARANCES:**                                     **OF COUNSEL:**

**SUSSMAN, WATKINS LAW FIRM**            **MICHAEL H. SUSSMAN, ESQ.**
1 Railroad Avenue
P.O. Box 1005
Goshen, New York 10924
*Attorneys for Plaintiff*

**OFFICE OF THE NEW YORK**                 **MARK G. MITCHELL, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
*Attorneys for Defendants*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Alan Lorefice commenced this action on December 21, 2021, asserting a single cause of action for gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") against Defendants the State of New York (the "State") and the Department of Environmental Conservation (the "DEC"). *See* Dkt. No. 1. Defendants answered on February 25, 2022. *See* Dkt. No. 25.

      Currently before the Court is Defendants' motion for a judgment on the pleadings. *See*

Dkt. No. 13.  For the reasons that follow, Defendants' motion is granted.

## II. BACKGROUND

According to Plaintiff's complaint,[1] Plaintiff was employed by the DEC as a biologist for approximately 20 years, ending with his termination in November 2020.  *See* Dkt. No. 1 at ¶ 1.  While Plaintiff was employed at the DEC, he became aware of another DEC employee—referred to herein as "D.K."—who worked "in a different section[] of the DEC."  *Id.* at ¶ 16.  D.K. "did not collaborate [with Plaintiff] on projects, and did not hang out [with him] at work."  *Id.*  The complaint alleges that, in late 2018, Plaintiff invited D.K. on a hike via a Facebook message.  *See id.* at ¶ 13.  D.K. "declined in a polite manner," which Plaintiff alleges "would not have given any reasonable person the impression that she wished no further contact with him."  *Id.* at ¶ 15.  Plaintiff did not contact D.K. again through the first few months of 2019, but did "continue to see D.K. around the DEC building" and "did develop affectionate feelings toward D.K. despite the substantial age difference between them."  *Id.* at ¶¶ 18-20.

Beginning in April 2019,[2] "informed by [his] developing feelings," Plaintiff began sending D.K. "many" more Facebook messages.  *Id.* at ¶ 21, 41.  These messages, according to the complaint, "express[ed] [P]laintiff's feelings of affection toward D.K. and proposed a life together."  *Id.* at ¶ 42.  The complaint claims that Plaintiff did not send any of these messages

---

[1] In setting forth the following facts, the Court does not rely on or consider the substance of the November 12, 2020 Opinion and Award attached to Defendants' answer.  *See* Dkt. No. 12-1.  A full discussion of this issue may be found below.

[2] The complaint later states that the Facebook messages were sent between "April 2020 and November 2020."  Dkt. No. 1 at ¶ 41.  This inconsistency need not be resolved for the purposes of this motion.

2

during work hours and that D.K. "never told [P]laintiff to stop." *See id.* at ¶¶ 22, 25.³ D.K.'s lack of response and the infrequency of their interactions at work "did not alter [Plaintiff's] feelings for her." *Id.* at ¶¶ 24-27.

Plaintiff's next in-person interaction with D.K. came when she hosted an after-work party. The complaint alleges that they "interacted unremarkably, and [P]laintiff engaged in no behavior which D.K. viewed (or could reasonably be viewed) as sexual or romantic in nature." *Id.* at ¶ 34. To thank her for hosting the party, Plaintiff "baked D.K. a quiche and brought it to her workspace," which D.K. declined. *Id.* at ¶¶ 36, 37. The complaint claims that Plaintiff "made no sexual comments or gestures of any sort" during this interaction. *Id.* at ¶ 38. Shortly after that encounter, D.K. mentioned Plaintiff to her friends, and one of them asked to see a photograph of Plaintiff. *See id.* at ¶¶ 39-40. Upon searching her Facebook for a photo of Plaintiff, D.K. discovered the "many" messages sent by Plaintiff. *Id.* at ¶ 41. The complaint suggests that discovering these messages all at once may have "overwhelmed D.K. and made her feel uncomfortable." *Id.* at ¶ 44. Shortly thereafter, D.K. reported the messages to her supervisor. *See id.* at ¶ 45.

After receiving D.K.'s complaint, the DEC suspended Plaintiff from work and charged him with sexual harassment. *See id.* at ¶ 6. The complaint asserts that Plaintiff was "unceremoniously" escorted from the building without "any chance to explain his side of the story." *Id.* at ¶ 45. Plaintiff denied the disciplinary charges and the matter proceeded to arbitration. *See id.* at ¶ 7. At the arbitration, the DEC "claimed that [P]laintiff had demonstrated a pernicious pattern of pursuing women he met at the workplace." *Id.* at ¶ 48. The complaint

---

³ As the complaint later acknowledges, D.K. was unaware of these messages at the time. *See* Dkt. No. 1 at ¶¶ 41, 60.

elaborates on this point briefly, asserting that, "[s]everal years earlier, [P]laintiff had been interested in another female employee, E.R.," and that, "[a]fter E.R. left the DEC, she sought an assurance from administration that if she returned, [P]laintiff would not pursue her." *Id.* at ¶¶ 49-50.  The complaint then claims that Plaintiff "never engaged in any inappropriate conduct toward E.R." and "desisted from any out-of-work communication" with E.R. when he was informed by the DEC that E.R. "did not appreciate his communications with her." *Id.* at ¶ 51.  On November 12, 2020, the arbitrator issued an Opinion and Award (hereinafter, the "Arbitration Opinion"), that found, according to the complaint, Plaintiff "guilty of the majority of charges propounded against him." *Id.* at ¶ 8.  The Arbitration Opinion also recommended that Plaintiff's employment be terminated "on the ground that he was irredeemable and could not alter his conduct." *Id.*  Two days later, the DEC terminated Plaintiff's employment.  *See id.* at ¶ 9.

      On the basis of those allegations, the complaint asserts that, "by terminating [Plaintiff's] employment on the basis of gender-based stereotypes and the false claim that he engages in sexual harassment," Defendants discriminated against Plaintiff on the basis of his gender in violation of Title VII of the Civil Rights Act of 1964.  *Id.* at ¶ 77.  The complaint reasons that

> Defendants' discipline of [P]laintiff represents a gender stereotypic response, one which assumes that, as a male, [P]laintiff could not control himself and eliminates the requirement that a person offended by an expression of interest expressly indicate as much before the person expressing such interest may fairly be accused of sexual harassment. ... This stereotype is a form of gender bias as is the presumption that a female is timid and unable to speak up for herself.

*Id.* at ¶¶ 63, 64.  The complaint further theorizes that the real reason for Plaintiff's termination was "to show fake solidarity with the '[#MeToo]' movement." *Id.* at ¶ 12.[4]

---

[4] The #MeToo movement is a "movement to increase awareness of sexual harassment and assault." *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1890 (2018).

Defendants now move for a judgment on the pleadings, arguing that (1) Plaintiff failed to plead a plausible Title VII discrimination claim, (2) the State is not a proper defendant in this action, and (3) Plaintiff should not be granted leave to amend. *See* Dkt. No. 13-1. In opposition, Plaintiff argues that he has plausibly alleged discrimination on the basis of gender in violation of Title VII, and that the State is a proper defendant because it is "the employer of state employees" like Plaintiff. Dkt. No. 15 at 15. Plaintiff also asserts that he should be permitted leave to amend his complaint if the Court finds it deficient. *See id.* at 15-16.

### III. DISCUSSION

**A.    Standard**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021). A motion for judgment on the pleadings is governed by "the same standard" as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth,

5

however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

**B.     Consideration of the Arbitration Opinion**

Defendants argue that this Court may consider the substance of the Arbitration Opinion when deciding this motion—without converting it to a motion for summary judgment—because the complaint has incorporated the Arbitration Opinion by reference. Dkt. No. 13-1 at 9-10. Defendants point out that the complaint expressly referred to the Arbitration Opinion and purported to set forth "the arbitrator's resolution of the charges, the penalty imposed, and the grounds for the arbitrator's determination." *Id.* at 10. In opposition, Plaintiff argues that the substance of the Arbitration Opinion may not be considered when deciding this motion because it

6

is irrelevant and not integral to the complaint. Dkt. No. 15 at 12-14.

"[O]n a motion for judgment on the pleadings, courts may consider all documents that qualify as part of the non-movant's 'pleading,' including," as relevant here, "documents incorporated by reference in or integral to the pleading." *Lively v. WAFRA Inv. Advisory Group, Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). "'To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents.'" *Mack v. Morse*, No. 3:19-CV-0430, 2021 WL 1146125, *4 (N.D.N.Y. Mar. 25, 2021) (quotation omitted). Similarly, "[a] document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153). "Under either of these two standards, a plaintiff's mere mention, limited quotation, or limited paraphrase of a document is not sufficient." *Mack*, 2021 WL 1146125, at *4 (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)); *see also Goel*, 820 F.3d at 559 ("Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough") (quotation omitted). "'In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.'" *Goel*, 820 F.3d at 559 (quoting *Glob. Network Commun., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

The Court finds that the Arbitration Opinion is neither incorporated by reference nor integral to the complaint. The complaint makes three statements that relate to the Arbitration Opinion:

> 7. Plaintiff denied the disciplinary charges propounded against him and the matter proceeded to an arbitration.
>
> 8. On November 12, 2020, the arbitrator found [P]laintiff guilty of the majority of charges propounded against him, not guilty of several of the charges and recommended the termination of his employment on the ground that he was irredeemable and could not alter his conduct.
>
> * * *
>
> 48. At his disciplinary hearing, Defendants claimed that [P]laintiff had demonstrated a pernicious pattern of pursuing women he met at the workplace.

Dkt. No. 1 at ¶¶ 7-8, 48. A limited reference to the existence of the arbitration hearing, a general statement of the outcome, and a brief characterization of an allegation advanced during the hearing are not the type of clear, definite, and substantial references required to incorporate an extrinsic document by reference. Although the recommendation made by the Arbitration Opinion clearly played a part in Plaintiff's ultimate termination, the Court does not discern any way in which the complaint "stands or falls" on that recommendation or the findings therein. *Goel*, 820 F.3d at 559 (quotation omitted). Presumably, Plaintiff could have been terminated even without the Arbitration Opinion's recommendation, and it is his termination by the DEC—not the Arbitration Opinion's recommendation—that Plaintiff rests his Title VII discrimination claim on. Nor are the Arbitration Opinion's findings dispositive of this claim. While a negative arbitration decision can "attenuate[ ] the plaintiff's 'proof of the requisite causal link' between a discriminatory motive and the adverse employment action," a plaintiff can overcome that attenuation by "'present[ing] strong evidence that the [arbitrator's] decision was wrong as a matter of fact ... or that the impartiality of the proceeding was somehow compromised.'" *Diggs v. Niagara Mohawk Power Corp.*, 691 Fed. Appx. 41, 44 (2d Cir. 2017) (quoting *Collins v. N.Y.C.*

*Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002)).[5]

Accordingly, the Court declines to consider the substance of the Arbitration Opinion in deciding this motion for a judgment on the pleadings.

**C.    The Title VII Discrimination Claim**

Defendants argue that this claim must be dismissed because the complaint fails to allege any specific facts supporting Plaintiff's assertion that Defendants were influenced by male or female stereotypes when terminating him. *See* Dkt. No. 13-1 at 6-8. In opposition, Plaintiff argues that the complaint has adequately pled that gender stereotypes were a motivating factor in his termination. *See* Dkt. No. 15 at 7-12.

"Title VII provides that it is 'an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or natural origin.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63 (1986) (quoting 42 U.S.C. § 2000e–3(a)). Discrimination claims under Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first make a *prima facie* case of discrimination by showing that "(1) [they are] a member of a protected class; (2) [they are] qualified for [the] position; (3) [they] suffered an adverse employment action; and (4) the circumstances give rise to

---

[5] The Court also notes that it may not consider the substance of the Arbitration Opinion merely because (1) it was attached to Defendants' answer, *see Lively*, 6 F.4th at 305 ("Unless a court is considering extrinsic material that is incorporated by reference into the complaint or on which the complaint relies or other matters of which the court can take judicial notice, it should remain within the non-movant's pleading when deciding both Rule 12(c) and 12(b)(6) motions"); or (2) Plaintiff had notice and possession of the Arbitration Opinion, *see Chambers*, 282 F.3d at 153 (reiterating that "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough").

an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). "The *sine qua non* of a gender-based discriminatory action claim under Title VII is that the discrimination must be *because* of sex." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (internal quotation marks omitted and emphasis in original).

But "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Indeed, as concerns the fourth prong, "'a plaintiff need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.* (quotation omitted). Nevertheless, "a discrimination complaint ... must [still] at a minimum assert nonconclusory factual matter sufficient to 'nudge[ ] [its] claims' ... 'across the line from conceivable to plausible' to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quotation omitted). Additionally, "'the elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 n.9 (2d Cir. 2015) (emphasis added) (quotation omitted).

"Title VII does not, by its express terms, prohibit all arbitrary employment practices. Rather, it is directed only at specific impermissible bases of discrimination such as race, color, religion, sex, or national origin." *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467, 475 (N.D.N.Y. 1999) (citations omitted). Additionally, courts have recognized that Title VII protects against gender stereotyping by the employer. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). Under the gender stereotyping theory of Title VII liability, "individuals who fail or refuse to comply with socially accepted gender roles are members of a protected class." *Dawson v. Bumble and Bumble*, 398 F.3d 211, 218 (2d Cir. 2005), *overruled on other grounds by Zarda v.*

*Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018). The gender stereotyping theory is grounded in the premise that "Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Price Waterhouse*, 490 U.S. at 251.

As Defendants argue, the complaint fails to allege any facts that support even a minimal inference of gender stereotyping in connection with Plaintiff's termination. Plaintiff's claim is essentially that his behavior with respect to D.K. did not provide the DEC any valid basis on which to terminate him and, therefore, the only plausible explanation for his termination must be that the DEC viewed him as "an aggressive male who needed to be terminated because he expressed affection for a female employee," which he views as "a naked expression of gender bias." Dkt. No. 15 at 7, 8, 10. The assertion that the DEC did not have grounds to terminate him is clearly contradicted by the complaint. Specifically, shortly before the DEC terminated Plaintiff, an arbitrator unambiguously (1) found Plaintiff guilty of "the majority" of the sexual harassment charges brought against him; (2) described his behavior with respect to D.K. as "irredeemable"; and (3) recommended his termination. Dkt. No. 1 at ¶ 8. Plaintiff may disagree with the Arbitration Opinion's conclusions, but it nevertheless provided the DEC a reason to terminate his employment that is wholly unrelated to whatever the DEC might believe about "aggressive male[s]."

In fact, there is absolutely no affirmative factual support to be found in the complaint for any of Plaintiff's theories about the reasons for his termination. Plaintiff makes, for example, claims that the DEC perceived him "as an aggressive male," or that the DEC terminated him "to show fake solidarity with the '[#MeToo]' movement," but does not point to even a single specific example of anyone at the DEC professing such beliefs or motivations. Dkt. No. 1 at ¶ 12. This complete lack of factual support is in sharp contrast to the gender stereotyping cases that Plaintiff

relies on. *See, e.g., Price Waterhouse v. Hopkins*, 490 U.S. 228, 235, 250-51 (1989) (holding that a plaintiff could allege an actionable gender stereotyping claim based on employment evaluations rife with criticisms concerning her perceived tendency to act in what was seen as a masculine manner); *Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, No. 20-3646-CV, 2022 WL 480477, *3 (2d Cir. Feb. 17, 2022) (concluding that the plaintiff established a *prima facie* case of racial stereotyping in light of statements made by the plaintiff's supervisor in response to a colleague's racist comments); *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (holding that "stereotypical remarks about the incompatibility of motherhood and employment 'can certainly be evidence that gender played a part' in an employment decision") (quotation omitted); *cf. Dawson*, 398 F.3d at 222-23 (dismissing a gender stereotyping claim because the plaintiff "produced no substantial evidence from which [the court could] plausibly infer that her alleged failure to conform her appearance to feminine stereotypes resulted in her suffering any adverse employment action").

In sum, the complaint fails to assert any "nonconclusory factual matter sufficient to 'nudge[ ] [Plaintiff's] claims' ... 'across the line from conceivable to plausible.'" *EEOC*, 768 F.3d at 254 (quotation omitted). Accordingly, Defendants' motion for judgment on the pleadings is granted.[6]

**D.    Amending the Complaint**

In his opposition to the motion to dismiss, Plaintiff states that although he "has not sought to amend his complaint and does not now seek to do so, it is widely recognized that if this court determines there is an infirmity in the Complaint and he can rectify that deficiency, he should be

---

[6] In light of the dismissal of Plaintiff's sole cause of action, the Court declines to reach Defendants' argument that the State is not a proper defendant in this action.

permitted leave to amend." Dkt. No. 15 at 15. Plaintiff's request is denied.

Allowing Plaintiff an opportunity to amend his complaint would be futile. As noted above, the complaint makes clear that the DEC had valid grounds to terminate him, including the findings of the arbitrator relating to the allegations of sexual harassment brought against him. Plaintiff's response does not provide any additional facts that could cure the defects in his complaint. *See F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (upholding the district court's finding that amendment would be futile in a situation where the plaintiff requested leave to amend in its opposition to the motion to dismiss in the event that the complaint was found to be insufficient because the plaintiff offered no clue how the defects identified could be cured through an amendment).

Moreover, in all cases assigned to the undersigned, a text notice is issued upon the opening of the case directing litigants to review the "Individual Rules and Practices of the Hon. Mae A. D'Agostino." Dkt. No. 4. Rule 2(A)(ii) of these Individual Rules provides as follows: "Motions to dismiss and for judgment on the pleadings in civil cases will be decided '**with prejudice**' unless (1) the opposing party amends as of right prior to the filing of the motion to dismiss; or (2) files, and the Court grants, a cross-motion to amend the complaint in response to the motion to dismiss." Here, Plaintiff has failed to file a cross-motion to amend in response to Defendants' motion to dismiss and, therefore, leave to amend is denied on this alternative ground.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for a judgment on the pleadings (Dkt. No. 13) is

**GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 18, 2022
       Albany, New York

                                                    Mae A. D'Agostino
                                                    U.S. District Judge